HEARD v STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY

Docket No. 64040. Argued November 13, 1980 (Calendar No. 3).—
Decided September 13, 1982. Rehearing denied *post,* 1111.

William H. Heard brought an action against State Farm Mutual
Automobile Insurance Company for personal protection insur-
ance benefits for injuries he suffered when he was struck by a
vehicle insured by the defendant while he was pumping gaso-
line into his own vehicle. The defendant moved for summary
judgment on the ground that the plaintiff's recovery was pre-
cluded under the no-fault act because the accident "involved"
his vehicle and the vehicle was not insured. The Oakland
Circuit Court, Steven N. Andrews, J., granted summary judg-
ment for the defendant, deciding that the plaintiff's vehicle was
involved in the accident within the meaning of the disqualifica-
tion provision of the no-fault insurance act. The Court of
Appeals, J. H. Gillis, P.J., and Beasley, J. (R. M. Ransom, J.,
dissenting), affirmed (Docket No. 78-2691). The plaintiff appeals.

In an opinion by Justice Levin, joined by Justices Kavanagh,
Ryan, and Moody, the Supreme Court *held:*

The plaintiff is entitled to personal protection insurance
benefits because his vehicle was not in use as a motor vehicle
at the time of the accident; rather, it was like other stationary
roadside objects which can be involved in vehicle accidents.

1. The disqualification of an uninsured owner of a motor
vehicle from entitlement to no-fault benefits is not absolute.
The disqualification applies where an uninsured vehicle is
"involved" in an accident, but the owner of an uninsured
vehicle is entitled to recover personal protection insurance
benefits if his uninsured vehicle is not "involved". If he suffered
injury in an accident while a pedestrian, a bicyclist, a motorcy-

REFERENCES FOR POINTS IN HEADNOTES

[1-4, 6, 7] 7 Am Jur 2d, Automobile Insurance §§ 351, 354, 356.
  Validity and construction of "no-fault" automobile insurance plans.
  42 ALR3d 229.
[2] 7 Am Jur 2d, Automobile Insurance § 355.
[4] 7 Am Jur 2d, Automobile Insurance § 194.
[5, 6] 7 Am Jur 2d, Automobile Insurance §§ 23, 341.

clist, or a passenger in another vehicle, such an owner is entitled to benefits.

2. The liability of a no-fault insurer does not depend on a causal relationship between an accident or injury and a vehicle. A no-fault insurer may be responsible for personal protection insurance benefits although the insured vehicle is not the cause of an accident, for example where an insured or certain members of his household suffer injury while they are pedestrians or occupants of other vehicles. Nor does the presence of a causal relationship between an accident and a vehicle resolve the question whether the vehicle is "involved" for purposes of the act. Whether a vehicle is "involved" cannot be determined by abstract reasoning or resort to dictionary definitions, but depends on the meaning derived from the purpose and structure of the no-fault act. Disqualification for benefits and the distribution of losses between insurance carriers were not meant to depend on adventitious circumstances which by "but for" analysis could be found to involve a vehicle.

3. Under the no-fault act, a parked vehicle is regarded merely as another stationary roadside object. The insurer of a parked vehicle is not subject to liability for no-fault benefits unless one of the parked vehicle exceptions is applicable. Where a moving vehicle collides with a properly parked vehicle, the insurer of the moving vehicle is obliged to pay property protection benefits for damage to the parked vehicle and its contents. The parked vehicle is not "involved" in the motor vehicle accident out of which the property damage arose for purposes of the act.

4. By reason of the exceptions to the parked vehicle provision, a parked vehicle is deemed to be involved in an accident under the act where an injury is sustained by a person while "occupying" the parked vehicle. In such a case, the injury is sustained by reason of the use of the vehicle as a motor vehicle insofar as the occupant is concerned.

5. No-fault liability may arise where an injury results from the maintenance of a motor vehicle. In this case, however, the plaintiff's injuries did not result from the maintenance or use of an uninsured vehicle as a motor vehicle, but from the operation and use of the vehicle insured by the defendant as a motor vehicle. The only vehicle in use as a motor vehicle at the time of the accident was the vehicle insured by State Farm. Heard's vehicle was a "tree or pole" for purposes of the act.

Reversed and remanded.

Justice Williams, joined by Chief Justice Coleman and Justice Fitzgerald, dissenting, would hold that the plaintiff's vehi-

cle was involved in the accident, and, because the vehicle was not insured, that he is not entitled to receive no-fault benefits.

1. The no-fault act provides that a person is not entitled to no-fault benefits for accidental bodily injury where he was the owner or registrant of a motor vehicle which was involved in the accident and that vehicle was not insured as required by the act. The maintaining of a vehicle, in this case by pumping gasoline into it, at the time of an accident in which a person is injured when pinned against his vehicle by another vehicle provides a sufficient causal connection between the injury and the vehicle being maintained to constitute "involvement". Thus, because the plaintiff's automobile was involved in the accident, and was not insured at the time of the accident, the plaintiff is precluded from recovering no-fault benefits.

2. The denial of no-fault benefits to injured persons whose uninsured vehicles are involved in accidents is in accord with the legislative intent of the no-fault act. The no-fault scheme contemplates that every owner of a vehicle will be insured in order to take advantage of the benefits under the system. The penalties and exclusions from coverage which are provided in the act must be given full force to achieve its goals of encouraging owners and registrants to obtain insurance and reducing the cost of insurance.

93 Mich App 50; 286 NW2d 46 (1979) reversed.

110 Mich App 126; 312 NW2d 181 (1981) disapproved.

### OPINION OF THE COURT

1. AUTOMOBILES — NO-FAULT BENEFITS — UNINSURED MOTORISTS.

The owner of an uninsured motor vehicle which is involved in an accident with an insured vehicle may not recover personal protection insurance benefits from the no-fault insurer of the other vehicle; however, where the uninsured vehicle is not in use as a motor vehicle at the time of the accident, but, rather, is like other stationary roadside objects which can be involved in vehicle accidents, the uninsured owner may recover personal protection insurance benefits from the insurer of the insured vehicle (MCL 500.3113, 500.3115[1][a]; MSA 24.13113, 24.13115[1][a]).

2. AUTOMOBILES — NO-FAULT BENEFITS — UNINSURED MOTORISTS — PARKED VEHICLES — PEDESTRIANS.

A person who is struck by an insured moving motor vehicle and is pinned against his own uninsured parked motor vehicle while pumping gasoline into the uninsured vehicle is entitled to personal protection insurance benefits from the insurer of the moving vehicle because, under the no-fault act, the accident did

not arise out of the use or maintenance of the uninsured vehicle as a motor vehicle, but from the operation and use of the insured vehicle as a motor vehicle (MCL 500.3115; MSA 24.13115).

DISSENTING OPINION BY WILLIAMS, J.

3. AUTOMOBILES — NO-FAULT BENEFITS — UNINSURED MOTORISTS.

*The owner or registrant of an uninsured motor vehicle who sustains bodily injury in an accident involving that vehicle is not entitled to personal protection insurance benefits under the no-fault act (MCL 500.3113; MSA 24.13113).*

4. AUTOMOBILES — NO-FAULT BENEFITS — UNINSURED MOTORISTS — MAINTENANCE.

*Maintaining an uninsured motor vehicle by pumping gasoline into it at the time of an accident in which the owner pumping the gasoline is injured by being pinned against his vehicle by another vehicle provides a sufficient causal connection between the injury and the vehicle being maintained to constitute involvement for the purpose of applying the disqualification provision of the no-fault act (MCL 500.3113; MSA 24.13113).*

5. AUTOMOBILES — NO-FAULT BENEFITS — COMPULSORY INSURANCE — LEGISLATIVE PURPOSE.

*The Legislature believed that the goal of the no-fault insurance act to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses could be most effectively achieved through a system of compulsory insurance; thus, the no-fault scheme contemplates that every individual owner of a motor vehicle will have insurance to take advantage of the benefits under the system (MCL 500.3101; MSA 24.13101).*

6. AUTOMOBILES — NO-FAULT BENEFITS — UNINSURED MOTORISTS — DISQUALIFICATION — LEGISLATIVE PURPOSE.

*The penalties and exclusions of the no-fault insurance act for uninsured motorists are necessary to encourage owners and registrants to obtain insurance; thus, they must be given their full force to achieve the goals of the no-fault act (MCL 500.3102[2], 500.3113, 500.3135; MSA 24.13102[2], 24.13113, 24.13135).*

7. AUTOMOBILES — NO-FAULT BENEFITS — UNINSURED MOTORISTS — INVOLVED IN ACCIDENT.

*Construction of the no-fault insurance act to preclude from benefits a plaintiff who, while standing behind and pumping*

*gasoline into his uninsured motor vehicle, was struck from
behind by a motor vehicle operated by the defendant's insured
and pinned between the two vehicles is in accord with the
legislative intent that the owner of a motor vehicle obtain no-
fault insurance to take advantage of the benefits of the system
and that costs would be reduced for contributors to the no-fault
scheme (MCL 500.3113[b]; MSA 24.13113[b]).*

*Marston, Sachs, Nunn, Kates, Kadushin &
O'Hare, P.C.* (by *David K. Barnes, Jr.),* for plaintiff.

*Eggenberger, Eggenberger, McKinney & Weber,
P.C.,* for defendant.

LEVIN, J. *(for reversal).* William H. Heard seeks
to recover no-fault automobile liability insurance
benefits for injuries suffered when he was struck
by an automobile while he was pumping gasoline,
at a self-service station, into a vehicle owned by
him. Heard was pinned between his vehicle and
the vehicle which struck him.

Heard, who had not purchased no-fault insur-
ance for his vehicle, brought this action to recover
no-fault benefits from State Farm Mutual Automo-
bile Insurance Company, the insurer of the vehicle
which struck him.

The circuit court granted State Farm summary
judgment, dismissing Heard's complaint on the
ground that the no-fault act provides that a person
is not entitled to no-fault personal protection in-
surance (PIP) benefits if he is the owner of an
uninsured "motor vehicle involved in the accident"
(§ 3113 of the no-fault act).[1] The Court of Appeals
affirmed.

---

[1] "Sec. 3113. A person is not entitled to be paid personal protection
insurance benefits for accidental bodily injury if at the time of the
accident any of the following circumstances existed:

\* \* \*

"(b) The person was the owner or registrant of a motor vehicle
involved in the accident with respect to which the security required
by subsections (3) and (4) of section 3101 was not in effect." MCL
500.3113; MSA 24.13113.

We reverse and remand for trial because we are of the opinion that a parked vehicle is not "involved in the accident" unless one of the exceptions to the parked vehicle provision (§ 3106)[2] is applicable. Those exceptions spell out when a parked vehicle is deemed to be in use as a motor vehicle; "[e]ach exception pertains to injuries related to the character of a parked vehicle *as a*

[2] "Sec. 3106. (1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

"(a) The vehicle was parked in such a way to cause unreasonable risk of the bodily injury which occurred.

"(b) Except as provided in subsection (2), the injury was a direct result of physical contact with the equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process.

"(c) Except as provided in subsection (2) for an injury sustained in the course of employment while loading, unloading, or doing mechanical work on a vehicle, the injury was sustained by a person while occupying, entering into, or alighting from the vehicle.

"(2) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Compiled Laws, are available to an employee who sustains the injury in the course of his or her employment while loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle." MCL 500.3106; MSA 24.13106.

The foregoing reflects amendments made by 1981 PA 209. The editor's note to the Michigan Compiled Laws Annotated states:

"1981 Amendment. Inserted the subsection numbering; in subsec. (1)(b), inserted 'the' following 'contact with', and 'Except as provided in subsection (2),'; in subsec. (1)(c), inserted 'Except as provided in subsection (2) for an injury sustained in the course of employment while loading, unloading, or doing mechanical work on a vehicle,'; and added subsec. (2).

"P.A. 1981, No. 209, § 2, provided:

" 'This amendatory act shall take effect January 1, 1982 and shall be applicable to all causes of action which occur after the effective date of this amendatory act.'

"P.A. 1981, No. 209, was ordered to take immediate effect and was approved Dec. 30, 1981."

See also *Miller v Auto-Owners Ins Co,* 411 Mich 633; 309 NW2d 544 (1981), discussed in fn 6.

*motor vehicle*—characteristics which make it unlike other stationary roadside objects that can be involved in vehicle accidents". *Miller v Auto-Owners Ins Co,* 411 Mich 633, 640; 309 NW2d 544 (1981). (Emphasis supplied.)

At the time of the accident, Heard's vehicle was not in use as a motor vehicle; rather, it was like "other stationary roadside objects that can be involved in vehicle accidents". Heard was entitled to PIP benefits from State Farm. § 3115(1)(a).[3]

I

The disqualification of an uninsured owner from entitlement to no-fault benefits is not absolute. While the no-fault act does indeed provide that the owner of an uninsured "motor vehicle involved in the accident" is not entitled to recover PIP benefits, the converse is equally true: the owner of an uninsured vehicle *is* entitled to recover PIP benefits if his uninsured motor vehicle is *not* "involved in the accident". An owner is entitled to PIP benefits, although he has not insured his vehicle, if he suffers injury in a motor vehicle accident while he is a pedestrian, a bicyclist, a motorcyclist, or a passenger in another vehicle.

Since the penalty for failing to purchase no-fault insurance is limited to disqualification for benefits when the uninsured vehicle is involved in the accident, it begs the question to argue that Heard

---

[3] "Sec. 3115. (1) Except as provided in subsection (1) of section 3114, a person suffering accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:

"(a) Insurers of owners or registrants of motor vehicles involved in the accident.

"(b) Insurers of operators of motor vehicles involved in the accident." MCL 500.3115; MSA 24.13115.

is "seeking to take advantage"[4] of those who have contributed to the system. Because Heard's uninsured vehicle was not involved in the accident and he was a pedestrian and not a motorist or occupant of a motor vehicle (or, if one prefers, he was more like a pedestrian than a motorist or occupant), he is as much entitled—under the terms and policies of the no-fault act—to recover from the insurer of the vehicle that struck him as is a pedestrian or motorcyclist who does not own an automobile (or a pedestrian or motorcyclist who does own an automobile but who, like Heard, has not purchased no-fault insurance) and who also has not contributed "to the fund from which benefits are to be paid".[5]

II

The dissenting opinion states:

"To determine whether a vehicle is involved in an accident, it is necessary to decide the required causal relationship between the injury and the uninsured vehicle. We hold that when one is maintaining his vehicle at the time of an accident, as by pumping gasoline, and is pinned between his car and another car as a result of the accident, there is a sufficient causal connection between his injury and his automobile to constitute involvement. The mere fact that plaintiff's automobile was stationary does not mean that the vehicle was not involved. Physically, even if a motor vehicle hits a tree or pole, those things are 'involved' in the accident. If those things had not been at the scene, there might not have been any accident at all, and certainly any accident that did occur would be of a different nature without them. Therefore, plaintiff's automobile was involved in the accident, and thus, as

[4] *Post,* p 159 (Williams, J.).

[5] *Id.*

an uninsured motorist, plaintiff is precluded from recovering no-fault benefits."

The liability of a no-fault insurer does not depend on there being a "causal relationship" between the accident or injury and a vehicle. While there is often a causal relationship between the insured vehicle and the accident, a no-fault insurer may be responsible although the insured vehicle is not a cause of the accident. For example, the no-fault insurer of an insured person is subject to liability if the insured person or certain members of his household suffer injury while pedestrians or occupants of other vehicles.[6]

Just as the absence of causal relationship or of its corollary, fault, does not necessarily relieve the no-fault insurer of liability, so too the presence of a "causal relationship" does not resolve the question whether a particular vehicle is "involved" for the purposes of the act. Whether a vehicle is "involved" cannot be determined by abstract reasoning or resort to dictionary definitions. It depends on the meaning derived from the purpose and structure of the no-fault act.

While there will generally (perhaps always) be some causal relationship between the loss incurred and a "vehicle involved in the accident", it does not follow that whenever there is any causal relationship the vehicle is "involved". "But for" causal analysis would "involve" a vehicle which drops off a member of a car pool who, after he reaches the curb, is struck crossing a street; a vehicle which runs out of gas where a person who was an occupant is struck walking along the highway to a service station; and a vehicle left in a parking lot where a person who was an occupant is struck

[6] MCL 500.3114; MSA 24.13114.

crossing the street. "But for" analysis could even involve a disabled automobile left at home occasioning the use of other transportation setting in motion a chain of events which lead to accidental injury of the owner of the disabled vehicle, members of his family and other persons.

"But for" analysis can, indeed, be limited by interposing a requirement of physical proximity. Because Heard was pinned between his vehicle and the offending vehicle, his vehicle is involved; or because he, rather than a service station attendant, was pumping the gasoline, his vehicle is involved. Heard had, he testified on deposition, been leaning against his vehicle, and State Farm argues that for that reason also his vehicle is involved.

We are persuaded, however, on examination of the no-fault act as a whole, that disqualification for benefits and the distribution of losses between insurance carriers (which depends in some circumstances on the meaning given the term "vehicle involved in the accident", see part *III)* were not meant to depend on such adventitious circumstances. Disqualification and loss distribution does not turn on whether a person is pinned against a gasoline pump, the wall of a service station, a tree, his vehicle, or another vehicle unless the vehicle is being used as a motor vehicle. When a vehicle is parked, it is deemed not to be in use as a motor vehicle, and, for purposes of the act, it is like a gasoline pump, the wall of a service station, or a tree.

This Court observed in *Miller v Auto-Owners,* p 639:

"Injuries involving parked vehicles do not normally involve the vehicle *as a motor vehicle.* Injuries involv-

ing parked vehicles typically involve the vehicle in much the same way as any other stationary object (such as a tree, sign post or boulder) would be involved. There is nothing about a parked vehicle *as a motor vehicle* that would bear on the accident." (Emphasis in original.)


## III

It is apparent, upon examination of the sections of the no-fault act other than § 3113 (concerning disqualification), that a parked motor vehicle is indeed regarded for purposes of the no-fault act as if it were a "tree or a pole". Just as the owner of a tree or pole is not required to purchase no-fault insurance, neither is the insurer of a parked motor vehicle subject to liability for no-fault benefits unless one of the parked vehicle exceptions is applicable.[7]


## A

A basic principle of the no-fault act is that neither a motorist nor his no-fault insurer is subject to liability for damage to a moving vehicle,[8] but that his no-fault insurer is subject to liability for damage to a parked vehicle. That principle is expressed in language which indicates that a parked vehicle is not "involved" in an accident with a moving vehicle.

---

[7] See fn 2 and accompanying text. The no-fault insurer is also subject to liability "without regard to whether [the] vehicle might be considered 'parked' at the time of the injury" where the injury involved the maintenance of the vehicle as a motor vehicle. See *Miller v Auto-Owners, supra,* p 641.

[8] The act was amended by 1979 PA 145 to subject owners and operators to liability up to $400 for damage to motor vehicles to the extent that the damages are not covered by insurance. MCL 500.3135(2)(d); MSA 24.13135(2)(d).

A no-fault insurer is required to pay *property* protection insurance benefits for damage to tangible personal property (§ 3121).[9] Such benefits are not, however, payable for damage to motor vehicles and their contents—each owner is required to purchase his own collision insurance—"unless the vehicle is parked in a manner as not to cause unreasonable risk of the damage which occurred". § 3123(1)(a).[10] These provisions of the no-fault act mean that the no-fault insurer of a moving vehicle which collides with a parked vehicle is obliged to pay, without regard to fault, property protection insurance benefits to the owner[11] of the parked vehicle for damage to the vehicle and its contents.

In *Miller,* pp 639-640, fn 1, this Court said of § 3123(1)(a):

"Similarly, § 3123 of the act excludes damage to motor vehicles from the statutory obligation to pay

[9] "Sec. 3121. (1) Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle subject to the provisions of this section and sections 3123, 3125 and 3127.

"(2) Property protection insurance benefits are due under the conditions stated in this chapter without regard to fault.

"(3) Damage to tangible property consists of physical injury to or destruction of the property and loss of use of the property so injured or destroyed." MCL 500.3121; MSA 24.13121.

[10] "Sec. 3123. (1) Damage to the following kinds of property is excluded from property protection insurance benefits:

"(a) Vehicles and their contents, including trailers, operated or designed for operation upon a public highway by power other than muscular power, unless the vehicle is parked in a manner as not to cause unreasonable risk of the damage which occurred.

"(b) Property owned by a person named in a property protection insurance policy, the person's spouse or a relative of either domiciled in the same household, if the person named, the person's spouse, or the relative was the owner, registrant, or operator of a vehicle involved in the motor vehicle accident out of which the property damage arose." MCL 500.3123; MSA 24.13123.

[11] If the owner has purchased collision or other insurance, the no-fault insurer is obligated to reimburse the owner's insurer(s).

benefits for damage to property, unless the motor vehicle is parked in a manner so as not to cause an unreasonable risk of the damage that occurs. MCL 500.3123(1)(a); MSA 24.13123(1)(a). A properly parked motor vehicle is thus treated under the act as non-vehicular property for purposes of the payment of property protection insurance benefits."

The next subsection, 3123(1)(b),[12] provides that property protection insurance benefits are not payable for property owned by a person covered by a no-fault policy if such person was the owner or operator of a "vehicle *involved* in the motor vehicle accident out of which the property damage arose". (Emphasis supplied.)

It thus appears that subdivisions (a) and (b) of § 3123(1) are complementary. A no-fault insurer is not required to pay property protection benefits for damage to a motor vehicle or its contents. Nor is it required to pay such benefits for personalty owned by a person covered by a no-fault policy in respect to an owned or operated "vehicle involved in the motor vehicle accident out of which the property damage arose". Nevertheless, the no-fault insurer of a moving vehicle that strikes a parked vehicle is subject to liability for damage to contents as well as for damage to the vehicle.

Reading the two subdivisions together, a parked vehicle is not "involved in the motor vehicle accident out of which the property damage arose". If a parked vehicle were held to be involved in a motor vehicle accident, the operative effect of "and their contents" (§ 3123[1][a]) would be largely eliminated because, under § 3123(1)(b), benefits are not payable for personalty (contents) located in an involved vehicle owned or operated by a person (or family members domiciled in his household) cov-

---

[12] See fn 10.

ered by no-fault insurance. The incongruous result of such a construction would be that while the insured owner of a parked vehicle is entitled to recover (without regard to fault) for loss of the vehicle, neither he nor any family member domiciled in his household could recover for loss of the contents of the vehicle, and a non-family member alone could recover (without regard to fault) for contents left in the parked vehicle.

## B

Nor would the proffered construction be consistent with § 3125 which states that a person suffering accidental *property* damage shall claim property protection insurance benefits from the insurers of owners (or of operators) of "vehicles *involved* in the accident".[13] (Emphasis supplied.) Under the proffered construction, the no-fault insurer of the parked vehicle would contribute to the cost of reimbursing its insured for damage to the parked vehicle and its contents although a principle of the act is that a no-fault insurer has no liability to its insured for property damage unless he chooses to purchase collision or other insurance.

## C

Another section of the act, § 3115(1), provides that a person who is not covered by a no-fault policy who suffers accidental bodily injury while not an occupant of a motor vehicle is entitled to PIP benefits from insurers of owners (or of operators) of "motor vehicles *involved* in the accident".[14]

---

[13] "Sec. 3125. A person suffering accidental property damage shall claim property protection insurance benefits from insurers in the following order of priority: insurers of owners or registrants of vehicles involved in the accident; and insurers of operators of vehicles involved in the accident." MCL 500.3125; MSA 24.13125.

[14] See fn 10 above.

(Emphasis supplied.) Suppose a motor vehicle collides with the rear of a properly parked vehicle which moves forward and strikes a pedestrian who is not insured. In the circumstance where another vehicle is involved, it is opposed to a principle of the no-fault act to require the insurer of the parked vehicle—regarded under the act as a "stationary roadside object", *Miller v Auto-Owners, supra,* p 640—to contribute to the payment of PIP benefits.[15]

D

The construction which we believe to be correct is consistent with § 3111 which makes PIP benefits portable throughout the United States and Canada for persons covered by a no-fault policy and for occupants of a "vehicle *involved* in the accident".[16] (Emphasis supplied.) By reason of the exceptions to the parked vehicle provision, a parked vehicle is deemed to be involved in the accident where the injury was sustained by a person while "occupying" a vehicle. § 3106(1)(c). In such a case, the injury is sustained as a result of the use of the vehicle as a motor vehicle. The vehicle, although

[15] Accordingly, we disapprove of *Gutierrez v Dairyland Ins Co,* 110 Mich App 126; 312 NW2d 181 (1981), leave to appeal applied for, holding that both vehicles are involved in a factual situation similar to that presented in the instant case except that the person pinned was a service station attendant who was not covered by a no-fault policy and the question was whether the insurer of the parked vehicle was required to contribute to the payment of PIP benefits.

[16] "Sec. 3111. Personal protection insurance benefits are payable for accidental bodily injury suffered in an accident occurring out of this state, if the accident occurs within the United States, its territories and possessions or in Canada, and the person whose injury is the basis of the claim was at the time of the accident a named insured under a personal protection insurance policy, his spouse, a relative of either domiciled in the same household or an occupant of a vehicle involved in the accident whose owner or registrant was insured under a personal protection insurance policy or has provided security approved by the secretary of state under subsection (4) of section 3101." MCL 500.3111; MSA 24.13111.

parked, is not a tree or a pole insofar as the occupant is concerned.

## IV

We have considered whether this Court's decision in *Miller v Auto-Owners* requires a different result. In *Miller,* this Court held that an insured owner is entitled to PIP benefits for injuries arising from the maintenance of his vehicle whether it is deemed to have been parked or not. *Miller* concerned a situation where no vehicle was involved in the accident unless it was the insured's vehicle.

Where no-fault liability arises from maintenance, the injury results from use of the vehicle as a motor vehicle, as when a battery or fuel line explodes or, as in *Miller,* a vehicle falls upon and injures a person. Heard's injury did not arise from the maintenance or use of an uninsured vehicle as a motor vehicle, but from the operation and use of the vehicle insured by State Farm as a motor vehicle. The only vehicle being used as a motor vehicle at the time of the accident was the vehicle insured by State Farm. Heard's vehicle was a "tree or pole" for purposes of the act.

We reverse and remand to the circuit court for further proceedings consistent with this opinion.

KAVANAGH, RYAN, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.

WILLIAMS, J. *(dissenting).* The ultimate issue on the merits in this case is whether an uninsured owner's car is "involved" in an accident, when the uninsured owner, while pumping gasoline into his car, was struck by another vehicle, pinned be-

tween the two cars, and as a result sustained injuries. MCL 500.3113; MSA 24.13113[1] provides that an uninsured motorist shall be denied no-fault benefits if his vehicle is "involved" in an accident. We would hold that plaintiff's car was involved in an accident and that plaintiff is therefore not entitled to receive no-fault benefits. We affirm the Court of Appeals and the trial court.

## I. FACTS

Plaintiff was injured when he was struck by another automobile and pinned against his own automobile while he was pumping gasoline into it at a self-service gas station. The automobile owned by plaintiff was not insured as required by Michigan law.

A claim for no-fault benefits from defendant, the insurer of the automobile that struck plaintiff, was denied. Plaintiff then filed suit in Oakland Circuit Court. Plaintiff pled that he "sustained bodily injury caused by an automobile collision * * * arising out of the ownership, operation or use" of defendant's insured's automobile. Defendant responded by a general answer, except that it pled "that the said auto collision involved the plaintiff and his automobile, said automobile of the plaintiff being an uninsured vehicle" under the no-fault act. A motion for summary judgment was filed by defendant pursuant to GCR 1963, 117.2(1). The

---

[1] Section 3113 provides in pertinent part:

"A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

* * *

"(b) The person was the owner or registrant of a motor vehicle *involved* in the accident with respect to which the security required by subsections (3) and (4) of section 3101 was not in effect." (Emphasis added.)

trial court granted the motion for summary judgment, concluding that the proximity to and association of the plaintiff with the uninsured vehicle was such that the vehicle was "involved" in the accident.

The Court of Appeals affirmed in a 2 to 1 opinion. *Heard v State Farm Mutual Automobile Ins Co,* 93 Mich App 50; 286 NW2d 46 (1979).

## II. ISSUE

Resolution of this case requires this Court to decide whether the statutory language of MCL 500.3113; MSA 24.13113, which provides that an uninsured motorist is precluded from recovering no-fault benefits if his vehicle is "involved" in an accident, applies to the facts in this case.

## III. DISCUSSION

This case presents an issue of first impression regarding the interpretation of the word "involved" as used in § 3113 of the no-fault act. Section 3113 provides that no-fault benefits shall not be recovered if the owner of the vehicle "involved" in the accident was uninsured at the time of the accident.

To determine whether a vehicle is involved in an accident, it is necessary to decide the required causal relationship between the injury and the uninsured vehicle. We would hold that when one is maintaining his vehicle at the time of an accident, as by pumping gasoline, and is pinned between his car and another car as a result of the

accident,[2] there is a sufficient causal connection between his injury and his automobile to constitute involvement.[3] The mere fact that plaintiff's automobile was stationary does not mean that the vehicle was not involved. Physically, even if a motor vehicle hits a tree or pole, those things are "involved" in the accident. If those things had not been at the scene, there might not have been any accident at all, and certainly any accident that did occur would be of a different nature without them. Therefore, plaintiff's automobile was involved in the accident, and thus, as an uninsured motorist, plaintiff is precluded from recovering no-fault benefits.

## IV. PUBLIC POLICY

While we understand that to so construe the term "involved", as we have here, precludes plaintiff from collecting no-fault benefits,[4] we feel it is in accord with the legislative intent. The no-fault act was:

"offered as an innovative social and legal response to

---

[2] Plaintiff testified in his deposition that he was standing behind his car when another vehicle struck him from behind and pinned him between the two cars. He states these same facts in response to several different questions.

[3] We do not hold that physical contact between two cars in an accident is required in order for a motor vehicle to be "involved" in the accident. The fact that the injured person was pinned between the two cars is enough, regardless of whether the two cars happen to come into contact with each other. In another context, this Court held that physical contact was not mandatory to fall under the "occupying" language of an automobile insurance policy. *Nickerson v Citizens Mutual Ins Co,* 393 Mich 324; 224 NW2d 896 (1975). Otherwise, recovery and, in this case, denial of recovery will be based on "fortuitous circumstances". Whether the bumpers actually come in contact or not should not be the decisive factor.

[4] While it precludes an uninsured person from recovering under these circumstances, our interpretation would permit an insured person to collect from his own insurer.

the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or 'fault') liability system. The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses. The Legislature believed this goal could be most effectively achieved through a system of *compulsory* insurance, whereby every Michigan motorist would be required to purchase no-fault insurance or be unable to operate a motor vehicle legally in this state. Under this system, victims of motor vehicle accidents would receive insurance benefits for their injuries as a substitute for their common-law remedy in tort." *Shavers v Attorney General,* 402 Mich 554, 578-579; 267 NW2d 72 (1978).

Thus, the no-fault scheme contemplates that every individual owner will have insurance in order to take advantage of the benefits under this system.

As a corollary, the act provides for certain penalties and exclusions for those who are uninsured. See MCL 500.3102(2); MSA 24.13102(2), MCL 500.3113; MSA 24.13113. The penalties and exclusions are necessary in order to encourage owners and registrants to obtain insurance so that the no-fault scheme can operate as contemplated. Thus, it is important that the penalties and exclusions be given their full force to achieve the goals of the no-fault act.

Another important goal of the no-fault act is that of cost reduction. An important aspect of reducing costs is assuring that benefits be paid only to those entitled to such benefits under the statute. In this case, if plaintiff were insured, he would, as a contributing member to the fund from which benefits are to be paid, be entitled to recover benefits. However, in this case plaintiff was not insured. He was not a contributor to the success of the no-fault scheme. Rather, by this

lawsuit, he was seeking to take advantage of those who had contributed. We find that the exclusion of § 3113 is applicable and thus precludes plaintiff from recovering and taking advantage of the contributing members. Obviously, to accomplish the goal of cost reduction, it is essential to give effect to the statutory exclusions.

### CONCLUSION

Defendant's motion for summary judgment was properly granted and affirmed in this case. The statutory language of § 3113, as well as the legislative intent and policy of the no-fault scheme as a whole, supports our conclusion that plaintiff's vehicle, under the facts in this case, was "involved" in the accident. The decision of the Court of Appeals should be affirmed, but in part for different reasons.[5]

COLEMAN, C.J., and FITZGERALD, J., concurred with WILLIAMS, J.

---

[5] We find that plaintiff's car was involved in the accident. Unlike the Court of Appeals, however, we do not rely on MCL 500.3106; MSA 24.13106 relative to parked motor vehicles. A discussion of this section is not necessary in order to reach our conclusion.