HASTINGS MUTUAL INSURANCE COMPANY v STATE FARM
INSURANCE COMPANY

Docket No. 106465. Submitted March 14, 1989, at Grand Rapids.
Decided June 6, 1989.

Arthur Spielmaker died of injuries sustained when he became
involved in a multivehicle accident while riding a motorcycle.
Hastings Mutual Insurance Company, insurer of one of the
automobiles involved in the accident, paid no-fault personal
protection benefits as a result of Spielmaker's death. Hastings
Mutual commenced an action in Kent Circuit Court, seeking
partial recoupment of the benefits paid by reason of Spielmak-
er's death from the insurers of the other automobiles which
were a part of the chain-reaction accident, State Farm Insur-
ance Company, Auto-Owners Insurance Company and Citizens
Insurance Company of America. Following a nonjury trial, the
court, George V. Boucher, J., found the automobile insured by
Hastings Mutual collided with the rear of the vehicle insured
by Auto-Owners, causing the Auto-Owners automobile to spin,
while the Hastings Mutual automobile struck the vehicle in-
sured by State Farm and then was struck broadside by Spiel-
maker. The driver of the automobile insured by Citizens
swerved to avoid the pileup and, while succeeding in avoiding
the other automobiles, struck Spielmaker. On those findings of
fact, Judge Boucher found that each of the automobiles had
been "involved" in the accident within the meaning of the no-
fault act and that each insurer was liable for an equal pro rata
share of the benefits paid. State Farm appealed. Auto-Owners
and Citizens cross appealed.

The Court of Appeals held:

1. Liability for the payment of personal protection benefits by
a no-fault insurer for injuries to the operator or passenger of a

REFERENCES

Am Jur 2d, Automobile Insurance §§ 351 et seq.; Expert and Opin-
ion Evidence §§ 146-148.

Admissability of opinion evidence as to cause of an accident or
occurrence. 38 ALR2d 13.

Combining or "stacking" of "no fault" or personal injury protection
(PIP) coverages in automobile liability policy or policies. 29
ALR4th 12.

motorcycle arises where the insured motor vehicle has "involvement" in the accident. Involvement within the meaning of the statute does not require actual physical contact between the motor vehicle and the motorcycle or motorcyclists, but rather requires only that there be an active contributing link between the insured motor vehicle and the injury to the motorcyclist. The trial court's finding that each of the automobiles actively contributed to acts resulting in Spielmaker's death was not clearly erroneous.

2. The trial court properly admitted the testimony by the accident reconstruction expert as to the probable cause of the deceased's injuries even though that testimony was at variance with the testimony of the medical examiner.

3. The trial court properly concluded that it was the intent of the Legislature that where, as here, there are multiple insurers of the same priority, the liability of such insurers shall be on an equal, pro rata basis without regard to the relative fault of the respective insureds.

Affirmed.

MURPHY, J., concurred on the basis that the trial court's finding of fact of involvement of each automobile was not clearly erroneous and that the trial court's distribution of liability satisfied the statutory mandate. He would affirm.

1. INSURANCE — NO-FAULT — MOTORCYCLES — MOTOR VEHICLES — INVOLVEMENT IN ACCIDENT.

There is evidence of the involvement of a motor vehicle in an accident in which the operator or passenger of a motorcycle is injured where there is evidence that the presence of a motor vehicle at the site of the accident was an active link contributing to the accident; a motor vehicle need not come in actual contact with a motorcycle or those on the motorcycle to be considered to have involvement in an accident of which the motorcycle was a part where the presence of the motor vehicle actively contributed to the happening of the accident by its presence (MCL 500.3114[5]; MSA 24.13114[5]).

2. EVIDENCE — ACCIDENT RECONSTRUCTION EXPERTS — MOTORCYCLES — INJURIES.

An accident reconstruction expert may testify as to which of the multiple collisions suffered by a motorcycle rider was likely to have caused the skull and spine fractures suffered by the motorcyclist.

3. INSURANCE — NO-FAULT — MOTORCYCLES — CONTRIBUTION.

Insurers of the same priority under the motorcycle accident

provision of the automobile no-fault act are liable for equal pro rata shares of any payments under the no-fault act irrespective of the relative degree of fault of their insureds (MCL 500.3114[6]; MSA 24.13114[6]).

*Nelson & Kreuger, P.C.* (by *James R. Nelson*), for plaintiff.

*Cholette, Perkins & Buchanan* (by *Robert E. Attmore*), for State Farm Insurance Company.

*Farr & Oosterhouse* (by *D. Scott Stuart*), for Citizens Insurance Company of America.

*Linsey, Strain & Worsfold, P.C.* (by *Donald R. Worsfold*), for Auto-Owners Insurance Company.

Before: WEAVER, P.J., and MURPHY and GRIFFIN, JJ.

GRIFFIN, J. Defendants, State Farm Insurance Company, Auto-Owners Insurance Company, and Citizens Insurance Company of America, appeal a judgment entered pursuant to a nonjury verdict ordering each defendant to pay plaintiff Hastings Mutual Insurance Company a pro rata share of no-fault insurance benefits arising from the death of Arthur Spielmaker. We affirm.

I

On April 17, 1986, motorcyclist Arthur Spielmaker was tragically killed in a multivehicle, chain-reaction collision. When the police arrived at the scene, they found in the intersection: three damaged automobiles, Spielmaker's damaged motorcycle, and the body of Arthur Spielmaker. A fourth damaged automobile was on the perimeter of the intersection. Skid marks leading from the fourth vehicle showed that it had run over Mr.

Spielmaker while the automobile was attempting to avoid the melee.

Although there were some factual disputes, Kent Circuit Judge George V. Boucher determined that the following scenario occurred. Carrie Levenworth (insured by Hastings) was traveling southbound on Cascade Road, Kent County, Michigan, when her automobile collided with the rear of an automobile owned and operated by Rose Mary Martin (insured by Auto-Owners). Judge Boucher found that, at the time of impact, Martin was decelerating rapidly in an effort to make a left turn. Levenworth's vehicle, after striking the rear panel of Martin's vehicle, spun clockwise across both lanes of northbound Cascade. Levenworth's vehicle was thereafter struck by Mary Alderink (insured by State Farm), whose automobile was traveling northbound on Cascade. Levenworth's vehicle was then struck broadside by Spielmaker while Spielmaker was operating his motorcycle southbound on Cascade. Jennifer VanderVoort (insured by Citizens), driving northbound on Cascade, swerved to the right in an effort to avoid the pileup. Although VanderVoort missed the other automobiles, she violently struck motorcyclist Spielmaker. According to an eyewitness: "The whole accident happened fairly instantaneously. Everybody hit everybody and it was a big blur."

Hastings paid $37,700 in no-fault personal protection insurance benefits as a consequence of Spielmaker's death and then brought suit for partial recoupment against the other insurers.

Judge Boucher found that all four automobiles were "involved" in the accident and, thereafter, apportioned responsibility for no-fault benefits equally among the four insurers.

State Farm, Auto-Owners, and Citizens appeal, arguing that the trial court's finding of "involve-

ment" by their insureds was clearly erroneous. In addition, Citizens appeals the equal or pro rata apportionment among the four insurers. Citizens argues that apportionment should be on the basis of respective fault, rather than pro rata.

II

The appeals in this case require construction of subsections 5 and 6 of § 3114 of the Michigan no-fault automobile insurance statute, MCL 500.3114(5), (6); MSA 24.13114(5), (6):

> (5) A person suffering accidental bodily injury arising from a motor vehicle accident *which shows evidence of the involvement of a motor vehicle* while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.
>
> (b) The insurer of the operator of the motor vehicle involved in the accident.
>
> (c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.
>
> (d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident.
>
> (6) If 2 or more insurers are in the same order of priority to provide personal protection insurance benefits under subsection (5), an insurer paying benefits due is entitled to partial recoupment from the other insurers in the same order of priority, together with a reasonable amount of partial recoupment of the expense of processing the claim, *in order to accomplish equitable distribution of the loss among all of the insurers.* [Emphasis added.]

As a matter of first impression, we are asked to construe the critical triggering phrase "shows evidence of the involvement of a motor vehicle." In

*Stonewall Ins Group v Farmers Ins Group,* 128
Mich App 307; 340 NW2d 71 (1983), this Court
addressed the nonoccupant priority provisions of
§ 3115 of the no-fault act, MCL 500.3115; MSA
24.13115, and construed the phrase "motor vehi-
cles involved in the accident." In *Stonewall* we
held that for a motor vehicle to be "involved" the
vehicle must play an active role which contributes
to the accident. This Court quoted with approval
the following statement made by the trial judge:

> I would say that I would agree that there has to
> be a link in the chain of circumstances that some-
> how has to be sort of an active link as opposed to a
> passive link. While it would *not* go so far as *fault,*
> there must be some sort of activity that somehow
> contributes in the happening of the accident. [128
> Mich App 309; emphasis in *Stonewall.*]

The requirement of an active role contributing
to the accident was affirmed in *Bachman v Pro-
gressive Casualty Ins Co,* 135 Mich App 641; 354
NW2d 292 (1984), and *Brasher v Auto Club Ins
Ass'n,* 152 Mich App 544; 393 NW2d 881 (1986).

Additionally, in *Wright v League General Ins
Co,* 167 Mich App 238, 245; 421 NW2d 647 (1988),
this Court applied the *Stonewall Ins Group* defini-
tion of "involvement" to § 3113(b), MCL
500.3113(b); MSA 24.13113(b), concerning unin-
sured vehicles. In rejecting the defendant's asser-
tion that the phrase "involved" under § 3113
should be construed differently, we stated:

> Contrary to League General's contention, the
> phrase involved in the accident should be consis-
> tently construed throughout the no-fault act, *Dus-
> sia v Monroe Co Employees Retirement System,*
> 386 Mich 244, 248; 191 NW2d 307 (1971); *Grand
> Rapids v Crocker,* 219 Mich 178, 182-183; 198

NW2d 221 (1922), and, consequently, cases which construe the phrase under § 3115 of the act would be applicable to § 3113. [167 Mich App 245.]

This Court then applied the active/passive test of *Stonewall* and concluded that the plaintiff's uninsured vehicle, which was struck from the rear, was "involved" in the accident:

> Plaintiff contends that his car did not contribute to the happening of the accident. Rather, the sole cause of his injury was the oil tanker driver's inattentiveness. However, we believe that plaintiff's car was an "active link" in the chain of circumstances causing the oil tanker to drive over his leg. Plaintiff was operating his vehicle when it ran out of gas and stalled on the roadway. Plaintiff then began pushing his vehicle, which was wholly in the lane of traffic, while reaching in the driver's side window to steer. *When his vehicle was struck in the rear, the impact pushed the vehicle forward which knocked plaintiff away from the vehicle and onto the ground where the oil tanker ran over plaintiff's leg.* We find that plaintiff's vehicle was involved in the accident and that such interpretation gives effect to the intent of the Legislature, which is to deny benefits to those whose uninsured vehicles are involved in accidents. [167 Mich App 246; emphasis added.]

Although the uninsured automobile in *Wright* was not the vehicle which ran over plaintiff's leg, its actions and motions nevertheless contributed to plaintiff's injuries.

In the instant case, we hold that the *Stonewall* definition of an active link contributing to the accident should also be applied to § 3114(5). In addition, we note that under § 3114(5) there must be "evidence" which "shows" the involvement of a motor vehicle.

Following a nonjury trial, the lower court found

that the evidence showed involvement by all four automobiles in the accident. On appeal, such findings of fact will not be set aside unless clearly erroneous. MCR 2.613(C).

Eyewitnesses and expert testimony support the trial court's findings that each of the four automobiles actively contributed to the accident. Two of the vehicles (Levenworth and VanderVoort) struck Spielmaker in rapid succession. The vehicles of Martin and Alderink, while not contacting Spielmaker, collided with the Levenworth vehicle and thus actively influenced its path of travel.[1] The trial court was therefore correct in viewing the chain-reaction collisions as a single accident. The lower court's findings of "involvement" by all four automobiles are not clearly erroneous.

### III

Next, Citizens argues that the trial court clearly erred in finding that its insured (VanderVoort) contributed to the death of Spielmaker. Citizens relies on the opinion of the medical examiner who testified that Spielmaker's skull fracture and spine fractures were caused by the initial collision with Levenworth rather than the subsequent collision with VanderVoort.

The testimony of the medical examiner was contradicted by accident reconstruction expert and former state police trooper Thomas G. Bereza who testified that Spielmaker's spine and skull fractures were likely caused by the VanderVoort collision. Citizens asserts that the trial court abused its discretion by allowing such testimony from Bereza. We disagree.

---

[1] State Farm argues that the great weight of the evidence suggests that Levenworth struck Spielmaker before the Alderink collision. Even if this were true, the Alderink vehicle would nevertheless be involved since its debris influenced the path of travel of VanderVoort.

The injuries of a skull fracture and spine fractures are not sufficiently complex to require medical testimony as to their origins. Rather, accident reconstruction expert and former state police trooper Bereza possessed sufficient expertise as to speeds and impacts to testify that a second high-speed collision would likely cause a skull fracture and spine fractures to a motorcyclist.

In addition, we note the instantaneous nature of the chain-reaction collisions. The trial court did not clearly err in concluding that both impacts were a proximate cause of Spielmaker's death. The argument that Spielmaker was already dead at the time he was run over by the VanderVoort automobile is implausible in view of the time frame in which the respective collisions occurred.

IV

Finally, Citizens argues that the trial court erred by apportioning responsibility among the four insurers pro rata rather than by a percentage of fault of their respective insureds. Although Citizens cites no case law in support of its position, it argues that a pro rata recoupment from insurers in the same order of priority is not an "equitable distribution of the loss among all the insurers" as mandated by the statute. We disagree and decline the invitation to put fault back into no-fault.

The common law has held that absent a specific statute or policy provision, when several insurers are each liable for a loss, the insurer who pays is entitled to partial recoupment from the coinsurers on a pro rata basis. Couch on Insurance 2d (Revised ed), § 62:2. The purpose of this rule is to equalize the burden and thus achieve equity:

Where several insurers bind themselves to pay

the entire loss in case of the destruction of the subject of the insurance, and one insurer pays the whole loss, the one so paying has a right of action against its coinsurers for a ratable proportion of the amount paid by it, because it has paid a debt which is equally and concurrently due by the other insurers. The purpose of this rule is to equalize the common burden by allowing reimbursement to the insurer paying the loss, for the excess paid over its share of the debt. [44 Am Jur 2d, Insurance, § 1792, pp 780-781.]

The partial recoupment provision in the no-fault act must be viewed in its historical context. At the time of its enactment, the Michigan general contribution statute authorized contribution on a pro rata basis without regard to fault.[2] Since there was no right of contribution at common law and contribution is controlled entirely by statute, *Reurink Bros Star Silo, Inc v Clinton Co Road Comm'rs*, 161 Mich App 67; 409 NW2d 725 (1987), contribution provisions should be narrowly, not liberally, construed.

In the present case, three of the four major auto insurers argue that the custom and practice of the industry is to distribute a loss pro rata when insurers are within the same order of priority. It is asserted that pro rata recoupment achieves the goal of "equitable distribution of loss," MCL 500.3114(6); MSA 24.13114(6). We agree.

The equal, pro rata division of responsibility is consistent with the primary purpose of the no-fault act which is the prompt resolution of claims without regard to fault. See *Shavers v Attorney General*, 402 Mich 554, 622-623; 267 NW2d 72 (1978). To assess damages against insurers based

[2] MCL 600.2925; MSA 27A.2925, now repealed. The general contribution statute, MCL 600.2925b; MSA 27A.2925(b), 1974 PA 318 as amended by 1982 PA 147, now allows consideration of relative fault.

upon the percentage of fault of their insureds would subvert the goals of the no-fault act. Delays in paying claims would be occasioned as insurers argued and litigated percentages of fault. An already overburdened Assigned Claims Facility would be forced to pay an increasing number of claims because of factual disputes among insurers concerning their obligations. MCL 500.3172(1); MSA 24.13172(1). Fault would be resurrected as a predominant issue in all multivehicle no-fault cases.

Michigan appellate decisions contain dicta that no-fault insurers in the same order of priority should pay no-fault benefits on a pro rata basis.

In *DAIIE v Home Ins Co*, 428 Mich 43, 45; 405 NW2d 85 (1987), the Supreme Court agreed with DAIIE that Home Insurance was in the same order of priority and therefore should reimburse one half of the no-fault benefits paid:

> The plaintiff insurer (DAIIE) began paying benefits to Patricia Piche, and tried unsuccessfully to persuade the defendant insurer (Home Insurance) to reimburse half of the benefits paid and bear half of the future expenses. DAIIE argued that, because it and Home Insurance each had issued a policy insuring Vernon, the injured person, each must bear half the expense of providing benefits.

The Supreme Court, although not specifically addressing the issue of distribution, agreed with DAIIE's position:

> Since DAIIE and Home Insurance each had issued a policy that named Vernon Piche as an insured operator, these two insurers are of equal priority. Recoupment is thus appropriate under the language of MCL 500.3115(2); MSA 24.13115(2), quoted in n 5. [*Id.*, p 48.]

Likewise, this Court in *Winters v National Indemnity Co,* 120 Mich App 156, 164; 327 NW2d 423 (1982), approved a pro rata division of responsibility between two no-fault insurers who shared common priority:

> Thus, because Winters was not an occupant of any motor vehicle involved in the accident, there is no clear reason for establishing any priorities between National Indemnity and DAIIE. We therefore affirm the trial court's order of partial summary judgment which divided the liability for plaintiff's no-fault benefits equally between the two insurers.

Such statements are supportive of the industry practice which has prevailed.

Based upon the above factors which include the spirit, intent, and goals of the no-fault statute, industry custom and practice, the language of the statutory provision and its historical context, we hold that liability for no-fault benefits as to no-fault insurers in the same order of priority shall be determined on a pro rata basis without regard to fault.

The judgment of the trial court is affirmed.

WEAVER, P.J., concurred.

MURPHY, J. *(concurring).* I concur to the extent that the trial court's finding of involvement by all four automobiles is not clearly erroneous; further, the court in apportioning responsibility for no-fault benefits equally among the four insurers accomplished the equitable distribution of loss required by MCL 500.3114(6); MSA 24.13114(6). Accordingly, I would affirm the trial court.