CINCINNATI INSURANCE COMPANY v PENNSYLVANIA
GENERAL INSURANCE COMPANY

Docket No. 170106. Submitted January 19, 1995, at Grand Rapids.
Decided March 20, 1995, at 9:30 A.M.

Cincinnati Insurance Company, the homeowner's insurer of George McMeekan, brought an action in the Cass Circuit Court against Pennsylvania General Insurance Company, the no-fault insurer of McMeekan, seeking reimbursement of amounts paid to McMeekan for damage to his home caused by a fire that started in his automobile because of mechanical problems while the automobile was parked in the garage attached to his house. The court, Michael E. Dodge, J., denied summary disposition for Pennsylvania General and granted summary disposition for Cincinnati. Pennsylvania General appealed.

The Court of Appeals *held:*

Coverage under the no-fault policy is excluded under MCL 500.3123(1)(b); MSA 24.13123(1)(b), which provides that damage to property owned by a person named in the property protection insurance provisions of the policy is excluded from property protection insurance if the person named is the owner, registrant, or operator of a vehicle involved in the motor vehicle accident out of which the property damage arose.

Order of summary disposition for Cincinnati vacated; case remanded for entry of judgment in favor of Pennsylvania General.

INSURANCE — NO-FAULT — HOUSEHOLD EXCLUSION.

Property protection insurance benefits under the no-fault act are not available to a no-fault insured for damage to the insured's home caused by a fire that starts in an automobile owned by the insured while the automobile is parked in the garage attached to the house (MCL 500.3123[1][b]; MSA 24.13123[1][b]).

*Mark Granzotto* and *Peter W. Smith,* for the plaintiff.

REFERENCES

Am Jur 2d, Automobile Insurance § 366.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

*Still, Nemier, Tolari & Landry, P.C.* (by *Jeffrey L. Tolari* and *Michelle E. Mathieu*), for the defendant.

Before: SAWYER, P.J., and BANDSTRA and R. B. BURNS,* JJ.

BANDSTRA, J. Pennsylvania General Insurance Company was the no-fault insurer of a car that caused a fire resulting in damage to the car owner's house, which was insured by Cincinnati Insurance Company under a homeowner's policy covering the house and its contents. The trial court denied a motion for summary disposition by Pennsylvania General and granted a motion for summary disposition in favor of Cincinnati. We reverse.

The parties have stipulated the facts of this case. The insured's Ford Bronco caught fire while parked in the garage attached to the house. Before the fire, the insured had noticed a burning smell coming from the vehicle and, upon inspection, it appeared that certain gaskets in the motor were leaking and that oil was dripping on the manifold. Also before the fire, the driver's side power window began to operate only intermittently. The car was scheduled for maintenance and repair the day after the fire occurred. The parties agree that the fire originated in the Bronco while it was parked in the garage because of either the oil leaking onto the manifold or from faulty wiring in the power window.

Whether insurance coverage for this fire was the responsibility of the homeowner's insurer or the no-fault insurer depends upon § 3123(1)(b) of the no-fault act, MCL 500.3123(1)(b); MSA 24.13123(1)(b), which provides:

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

(1) Damage to the following kinds of property is excluded from property protection insurance benefits:

* * *

(b) Property owned by a person named in a property protection insurance policy, the person's spouse or a relative of either domiciled in the same household, if the person named, the person's spouse, or the relative was the owner, registrant, or operator of a vehicle involved in the motor vehicle accident out of which the property damage arose.

If this section applies, Cincinnati as the homeowner's insurer is liable; if it does not apply, liability falls on Pennsylvania General as the no-fault insurer.

This Court has previously considered this "household exclusion" to no-fault coverage in *American States Ins Co v DAIIE,* 117 Mich App 361; 323 NW2d 705 (1982). There, a light that a homeowner was using while making repairs to a car in an attached garage fell and caused a fire that damaged the home. The homeowner's insurer paid for the property damage and then sued the no-fault insurer for reimbursement. The trial court granted summary disposition to the no-fault insurer, holding that the household exclusion, § 3123(1)(b), precluded coverage for the property damage under the no-fault act. This Court affirmed the grant of summary disposition to the no-fault carrier.

After this Court's decision in *American States,* the Supreme Court decided *Heard v State Farm Mutual Automobile Ins Co,* 414 Mich 139; 324 NW2d 1 (1982). The trial court in the instant case reasoned that, notwithstanding *American States,* the household exclusion did not apply to protect

the no-fault carrier under the Supreme Court's reasoning in *Heard.* We disagree.

The *Heard* analysis arose out of and was premised on the facts of that case. The plaintiff sought to recover no-fault insurance benefits for injuries he suffered when he was struck by another vehicle while he was pumping gasoline into his vehicle at a self-service gasoline station. The plaintiff suffered injuries when he was pinned between his vehicle and the other vehicle. At the time of the injury, the plaintiff's vehicle was uninsured; however, the plaintiff brought a lawsuit to recover no-fault benefits from the insurer of the vehicle that struck him. The question before the Supreme Court was whether the parked vehicle was "involved" in the accident, thus preventing the plaintiff who had failed to insure the vehicle from any recovery against the no-fault carrier under § 3113 of the no-fault act, MCL 500.3113; MSA 24.13113. The Court determined that the plaintiff's vehicle was not so "involved" and that he was not precluded from recovering no-fault benefits.[1]

The facts of *Heard* are distinguishable from those in the instant case in two ways. First, *Heard* considered a properly parked car that was "involved" in the accident only because it happened to be in the wrong place at the wrong time. The Supreme Court likened the vehicle to a gasoline pump or the wall of a service station, both stationary objects that would have caused similar personal injuries had the victim been pinned against them rather than the car. *Id.* at 148. Thus, the vehicle at issue was not involved in the accident "as a motor vehicle"; any stationary object (motor

---

[1] *Heard* did not consider the same section of the act at issue here but its analysis of the same statutory language is applicable here. See *Hastings Mutual Ins Co v State Farm Ins Co,* 177 Mich App 428, 433-434; 442 NW2d 684 (1989).

vehicle or not) would have caused the same personal injury. *Id.* at 148-149. In direct contrast, the vehicle in the instant case was not "involved" merely because it was in the wrong place at the wrong time. The parties have stipulated that the fire originated in the car as a result of one or both of two known mechanical problems. In contrast to the vehicle at issue in *Heard,* the vehicle here was directly involved in the accident "as a motor vehicle"; its mechanical problems started the fire. The Supreme Court noted that its analysis would have been different if it were considering a set of facts like those before us here:

> Where no-fault liability arises from maintenance, the injury results from use of the vehicle as a motor vehicle, as when a battery or fuel line explodes . . . . [*Id.* at 154.]

Second, the reasoning in *Heard* assumes that, in addition to the parked vehicle at issue, there was another vehicle that was definitely "involved" in the accident. The Court specifically distinguished *Miller v Auto-Owners Ins Co,* 411 Mich 633; 309 NW2d 544 (1981), saying that *Miller* "concerned a situation where no vehicle was involved in the accident unless it was the insured's vehicle." *Heard, supra.* In this regard, the instant case is more like *Miller* than *Heard.* The reasoning in *Heard,* applicable "[i]n the circumstance where another vehicle is involved," is not applicable here. See *id.* at 153.

In sum, the *Heard* analysis is compelling in a case like that before the Supreme Court, where a properly parked car was hit by another car. The Court in *Heard* held that the parked car was not sufficiently "involved" to deny its owner no-fault benefits under § 3113. The Court reasoned that the

use of the term "involved in the [motor vehicle] accident" in the statute was limited enough to conclude that it did not cover a parked car such as was at issue there.

But that is not to say that, regardless of clear facts showing a close causal connection between a vehicle and property damage, a properly parked car is never "involved" for purposes of the no-fault act. In the instant case, the parties have stipulated that the car owned by the insured caused the accident. To hold that this car was not "involved" would strain the reasoning of *Heard* far beyond the factual situation that supports it.[2]

The household exclusion applies in this case and the trial court erred in granting summary disposition to Cincinnati rather than Pennsylvania General. The order granting summary disposition to Cincinnati is vacated and the case is remanded to the trial court for entry of a judgment in favor of Pennsylvania General. We do not retain jurisdiction.

---

[2] Further, as Pennsylvania General points out, if the insured's car was not "involved," it is impossible to explain why the insurer of that car should be liable for any damages. Properly understood in the context of its facts, *Heard* does not require that incongruous result.