FORD MOTOR COMPANY v INSURANCE COMPANY OF NORTH AMERICA

Docket No. 87928. Submitted December 9, 1986, at Detroit. Decided February 17, 1987. Leave to appeal applied for.

Ford Motor Company brought an action in the Wayne Circuit Court against Insurance Company of North America. Plaintiff alleged that defendant, as the no-fault insurer for Refiners Transport & Terminal Corporation, was liable to plaintiff, under the property protection insurance provisions of the no-fault act, for damage caused by an explosion that occurred at one of plaintiff's plants when a Ford employee inadvertently directed a Refiners tanker truck driver to empty his load of catalyst into a resin tank. The trial court, Helene N. White, J., on a set of facts stipulated to by the parties, granted defendant's motion for summary disposition. Plaintiff appealed.

The Court of Appeals *held:*

1. The property damage in this case was not causally related to the ownership, maintenance or use of the tanker truck as a motor vehicle.

2. The loading or unloading of a motor vehicle is not a use of that vehicle for purposes of the property protection insurance provisions of the no-fault act.

Affirmed.

INSURANCE — NO-FAULT — PROPERTY PROTECTION BENEFITS — LOADING OR UNLOADING OF MOTOR VEHICLE.

The loading or unloading of a motor vehicle is not a use of that vehicle for purposes of the property protection insurance provisions of the no-fault act; thus, a no-fault insurer is not liable for property protection insurance benefits to a party who claims to have suffered property damage resulting from the loading or unloading of a motor vehicle (MCL 500.3121[1]; MSA 24.1312[1]).

REFERENCES

Am Jur 2d, Automobile Insurance § 366.
Risks within "loading and unloading" clause of motor vehicle liability insurance policy. 6 ALR4th 686.
Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

*Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald* (by *John L. Hopkins, Jr.,* and *John A. Lawson*), for plaintiff.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Michael F. Schmidt* and *Maurice A. Borden*), for defendant.

Before: GRIBBS, P.J., and CYNAR and N. J. KAUFMAN,* JJ.

PER CURIAM. Plaintiff Ford Motor Company appeals as of right from an order of the Wayne Circuit Court granting defendant's motion for summary disposition, MCR 2.116(C)(10).

The parties stipulated to the following facts in the circuit court:

> Between 7:00 A.M. and 7:18 A.M. on October 29, 1973, a tank truck from Refiners Transport & Terminal Corporation driven by Allen G. Clark, a Refiners employee, arrived at the Ford Motor Company Casting Plant in Flat Rock, Michigan. The truck was carrying 2,500 gallons of catalyst from a Ford Motor Company plant located in Mt. Clemens, Michigan. The truck, following the Ford plant procedure, arrived at shipping and receiving where a sample was drawn by Ford's Quality Control Department to cross check the contents of the truck against that which was indicated on the shipper's invoice. A Ford Motor Company employee checked the contents of the truck. Walter Presley determined that the contents matched the specifications for the material and verified the contents of the tank truck as catalyst. The tank truck was then sent to the basement storage area, driven by Refiners driver, Clark, who was accompanied from the shipping and receiving area to the basement area of the plant by Ford Motor Com-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

pany employee Gregory Davis. Davis, the Ford employee, incorrectly pointed out a resin tank to Clark, the Refiners driver, to unload, rather than a catalyst tank. The truck and Ford's tank were both equipped with pumps, but Ford's pump, which was controlled and operated by Ford's employee, was used to pump the catalyst from the tank truck into the resin tank. Clark apparently connected the tank truck to the tank pointed out by Davis. After the transfer of catalyst from the tank truck to the resin tank was complete, Clark drove the Refiner's truck from the basement area back to the shipping and receiving area where a Ford employee signed the bill of lading indicating that the delivery of the catalyst had been completed. The Refiners truck left the Ford plant site at approximately 9:23 A.M. At approximately 9:51 A.M. an explosion occurred. The explosion occurred because the catalyst, which was placed in the wrong tank, the resin tank, reacted with the resin resulting in the explosion.

The issue in this case is whether defendant, Refiners' no-fault insurer, is liable under the no-fault act for Ford's property damage.

In 1980, Judge Cohn of the United States District Court, Eastern District of Michigan, wrote that this case "has a long, somewhat tortured, and interesting history." *Ford Motor Co v Ins Co of North America,* 494 F Supp 846, 848 (ED Mich, 1980). That observation is even truer today in 1987. Ford had started the action in that court in 1974. The late Judge Gubow granted summary judgment for defendant on the ground that the property protection provisions of the Michigan no-fault act had been held unconstitutional in *Shavers v Attorney General,* 65 Mich App 355; 237 NW2d 325 (1975). Upon the subsequent reversal of *Shavers* by the Michigan Supreme Court, 402 Mich 554; 267 NW2d 72 (1978), the parties stipulated to

set aside Judge Gubow's order. Both parties again filed motions for summary judgment. Judge Cohn granted summary judgment to defendant, reasoning that the no-fault act did not make defendant liable for property damage in this case because there was no direct causal relationship between the truck and the property damage. 494 F Supp 853.

Ford appealed to the Sixth Circuit Court of Appeals, which vacated Judge Cohn's opinion on the ground that there was no diversity of citizenship between plaintiff and defendant's insured, Refiners, both being Delaware corporations. Lacking subject-matter jurisdiction, the court dismissed the action. 669 F2d 421 (CA 6, 1982). Ford then filed this action in Wayne Circuit Court on February 4, 1982. Defendant filed a motion for summary judgment, claiming that the property damage did not arise out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle as required under the no-fault act. The court granted this motion on June 28, 1985.

Ford does not dispute on appeal that this case is governed by construction of the no-fault statute providing for property damage benefits, MCL 500.3121(1); MSA 24.13121(1):

> Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the use, ownership, operation, maintenance or use of a motor vehicle as a motor vehicle subject to the provisions of this section and sections 3123, 2135 and 3127.

The parties disagree on whether the property damage in this case arose out of the "use of a motor vehicle as a motor vehicle" under this section. Ford argues that a tank truck engaged in unloading is covered by this phrase; defendant

counters that the property damage in this case did not arise from an action integral to the use of the truck as a motor vehicle, making the statute inapplicable. No reported Michigan appellate case has construed this phrase in this statute.

In one recent case brought under § 3121(1), this Court found that the no-fault act did not apply to damage to a gasoline service station caused by a fire when fuel leaking from a car being repaired there was ignited by the open flame of a hot water heater in the service bay. *Central Mutual Ins Co v Walter,* 143 Mich App 332; 372 NW2d 542 (1985), lv den 424 Mich 851 (1985). The *Walter* Court, like Judge Cohn when this case was in his court, applied the test first enunciated by this Court in *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1, 17; 235 NW2d 42 (1975), lv den 395 Mich 787 (1975), for determining whether an accident arises out of the ownership, operation, maintenance or use of a motor vehicle:

> [W]hile the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle.

Judge Cohn, applying the standards of *Kangas* and its progeny, concluded that "the explosion and subsequent property damage was not reasonably identifiable with the use of the tank truck as a motor vehicle; rather I find it was a fortuitous occurrence, caused by an intervening independent act." 494 F Supp 853.

We agree with Judge Cohn's well-reasoned analysis that it cannot be said that the property dam-

age in this case "arose out of the . . . use of a motor vehicle as a motor vehicle."

Ford argues, to no avail, that Judge Cohn found Ford at fault in reaching his conclusion. Under MCL 500.3121(2); MSA 24.13121(2), property protection insurance benefits are due under the conditions of this provision without regard to fault. Judge Cohn's analysis was based not on who was at fault, but who was in control; he found that, once Ford took control, delivery was effected and Refiners became a passive actor.

Nor did Judge Cohn err, as Ford argues, in applying proximate cause analysis in determining whether the explosion arose out of the use of a motor vehicle. Since *Kangas,* this Court has applied causation principles in construing "arising out of . . . ." clauses in the no-fault act. See, e.g., *DAIIE v Clemons,* 153 Mich App 244; 395 NW2d 53 (1986).

Ford would have us follow the reasoning of the federal district court in *BASF Wyandotte Corp v Transport Ins Co,* 523 F Supp 515, 517 (ED Mich, 1981), that "use of a motor vehicle as a motor vehicle" must include the loading and unloading of the vehicle. Ford asserts that this Court already adopted the *BASF Wyandotte* interpretation in *Bauman v Auto-Owners Ins Co,* 133 Mich App 101; 348 NW2d 49 (1984). However, *Bauman* was a personal injury case, and was based on a different section of the no-fault act in which the Legislature specifically provided that a plaintiff could recover for personal injuries in certain circumstances when the vehicle was being loaded or unloaded. MCL 500.3106(1)(b); MSA 24.13106(1)(b). No Michigan court has interpreted "use" in the property damage section of the no-fault act to include loading and unloading.

The fundamental goal of interpreting statutory

language is to discover and give effect to legislative intent. *Karl v Bryant Air Conditioning Co,* 416 Mich 558, 567; 331 NW2d 456 (1982). The first step in ascertaining that intent is to review the language in the statute itself. *Id.* Had the Legislature intended for "use" in § 3121 to include loading and unloading, it could have used those words, as it did in § 3106(1)(b). See *Bell v F J Boutell Driveaway Co,* 141 Mich App 802, 809; 369 NW2d 231 (1985). Given the very limited nature of the exception in § 3106(1)(b) to the parked vehicle exclusion, and the fact that this language is nowhere found in the section providing benefits for property damage, we are reluctant to declare a legislative intent to expand "use" to include any loading or unloading, as Ford would have us do.[1]

Moreover, even if we were to follow this "broad, remedial interpretation" of the phrase "use of a motor vehicle as a motor vehicle" so as to include the loading/unloading process, we are not persuaded that it would resolve the issue in this case. As Judge Cohn observed, even assuming that "use" includes "unloading," the unloading process was completed "without anything untoward occurring." 494 F Supp 853.

Ford vigorously disputes this, asserting that the interaction between the catalyst and the resin in the resin tank began during the course of the

---

[1] Determination of the legislative intent can be aided by review of the history of the provision. *Bell, supra,* p 810. In this case, defendant proffers deposition statements from one of the senators involved in the committee work on this section, and from one of the men commissioned to draft the statute. While both statements indicate an intent to provide only limited coverage in property situations, we note that Michigan law precludes the use of a legislator's present recollection of what he intended at the time of passage of a bill as evidence of legislative intent. *Presque Isle Twp School Dist No 8 Bd of Ed v Presque Isle Co Bd of Ed,* 364 Mich 604, 612; 111 NW2d 853 (1961); *City of Williamston v Wheatfield Twp,* 142 Mich App 714, 719; 370 NW2d 325 (1985).

unloading process itself, an interaction which irrevocably and inevitably culminated in the explosion which occurred later. In support of this view, Ford urges us to follow the "completed operations" doctrine which has been utilized in cases in other jurisdictions to expand coverage. As the trial court noted, however, even under this expansive completed operations doctrine, there must be some causal connection between the accident and the act of unloading. The cases upon which Ford relies all involved liability insurance policies, not a no-fault statute; moreover, the policies expressly defined "use" to include the loading and unloading of the vehicle. Also, *Copes v Copeland Building Supply, Inc,* 415 So 2d 264 (La App, 1982), and *Dodson v Key,* 508 SW2d 586 (Ky App, 1974), both involved personal injury, situations in which a court might be more apt to find coverage than when the damage is to property.

We agree with defendant that there is no reason to believe that the Legislature intended the no-fault act to provide coverage to the property owner in this situation.

Affirmed.