*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FREMONT INSURANCE COMPANY and
FRANKENMUTH INSURANCE COMPANY,

      Plaintiffs-Appellants,

v

STATE FARM MUTUAL AUTO INSURANCE
CO,

      Defendant-Appellee

and

JEFFREY LYNN GIBBS,

      Defendant.

FOR PUBLICATION
November 06, 2025
10:49 AM

No. 371046
Calhoun Circuit Court
LC No. 2023-003115-CB

Before: K. F. KELLY, P.J., and MARIANI and ACKERMAN, JJ.

ACKERMAN, J.

When is a parked car "involved" in an accident for purposes of no-fault benefits? Does it depend on the type of benefit being sought—such as personal protection insurance (PIP) or property protection insurance (PPI)—or on the specific circumstances that gave rise to the claim? In this case, we address whether a properly parked vehicle that was struck by a moving car and propelled into a pizzeria was "involved in the accident" for purposes of assigning responsibility for PPI benefits under MCL 500.3125. We conclude that, under those circumstances, the parked vehicle functioned no differently than any other inanimate object and was not "involved in the accident." We therefore affirm the trial court's grant of summary disposition.

## I. FACTS

The pertinent facts are straightforward and undisputed. On the evening of November 25, 2022, Kaleigh Gibson took a Ford Escape owned by Melissa Wells—who was insured through defendant State Farm Mutual Auto Insurance Company—to a Hungry Howie's pizzeria in Battle

Creek. Jeffrey Gibbs[1] apparently fell asleep at the wheel of his Ford Transit and struck Wells's parked Escape, pushing it into the Hungry Howie's. Gibson later signed an affidavit stating that the Escape was properly parked in a marked space and that she "was not occupying, entering, or alighting from the Escape at the time it was hit by the other vehicle."

Plaintiffs Fremont Insurance Company and Frankenmuth Insurance Company provided property insurance to the building owner and the pizzeria, respectively. After paying approximately $64,000 in benefits, they brought this subrogation action in Calhoun Circuit Court seeking no-fault PPI benefits from defendant. Before discovery closed, defendant moved for summary disposition, relying on Gibson's affidavit to argue that the Escape was not "involved in the accident" within the meaning of Michigan's no-fault statute. Plaintiffs countered that the trial court should instead grant summary disposition in *their* favor under MCR 2.116(I)(2). After argument, the trial court granted summary disposition to defendant, concluding that under *Turner v Auto Club Ins Ass'n*, 448 Mich 22; 528 NW2d 681 (1995), the Escape was not "involved in the accident." Plaintiffs now appeal.

## II.  STANDARD OF REVIEW

We review de novo questions of statutory interpretation and rulings on a motion for summary disposition. *Ford Motor Co v Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006); *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The motion in this case was brought under MCR 2.116(C)(10). Under that rule, the court "considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion," and may grant summary disposition if "there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). In requesting summary disposition under MCR 2.116(I)(2), plaintiffs conceded that there was no genuine issue of material fact and asked the court to apply the governing law in their favor based on the undisputed record.

## III.  ANALYSIS

Michigan's no-fault insurance system provides two core benefits: personal protection insurance (PIP), which covers bodily injury, and property protection insurance (PPI), which covers property damage.[2] Plaintiffs here seek PPI benefits. The statutory language at issue appears in both benefit schemes, and courts have often looked to one for guidance in interpreting the other.

---

[1] When this case was initially filed, Gibbs was named as a defendant. He has since passed away and was dismissed from the case on February 21, 2024. While he remains nominally listed as a defendant, we refer to State Farm as the defendant in this opinion.

[2] The acronym "PIP" is generally used to refer to personal protection insurance to avoid confusion with property protection insurance. See *Roberts v Farmers Ins Exch*, 275 Mich App 58, 66 n 4; 737 NW2d 332 (2007).

## A. STATUTORY LANGUAGE

The general rule of no-fault insurance in Michigan is that "the owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance and property protection insurance." MCL 500.3101(1). PPI benefits are available "for accidental damage to tangible property arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle." MCL 500.3121(1). The order of priority for PPI claims is governed by MCL 500.3125, which provides:

> A person suffering accidental property damage shall claim property protection insurance benefits from insurers in the following order of priority: insurers of owners or registrants of vehicles involved in the accident; and insurers of operators of vehicles involved in the accident.

Plaintiffs contend that the Escape was "involved in the accident" under this provision, so defendant, as the insurer of the vehicle's owner, is responsible for paying PPI benefits. Defendant disagrees, arguing that the Escape was not "involved" within the statutory meaning and therefore does not fall within § 3125's order of priority.

Although not directly implicated in this case, key portions of this statutory language are repeated in the PIP provisions of the statute. For example, MCL 500.3105(1) provides that PIP benefits are payable "for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." In the PIP context, however, that provision is expressly limited by the parked vehicle exclusion of MCL 500.3106(1), which states that "[a]ccidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle" absent certain enumerated exceptions. Relevant here, the PIP framework also contains a provision to deter "free riders," which bars PIP benefits to an uninsured owner or registrant of a motor vehicle that was "involved in the accident." MCL 500.3113(b).

## B. SUPREME COURT AUTHORITY

A series of Michigan Supreme Court decisions sheds light on when a vehicle is "involved in the accident" under the no-fault act. Defendant relies on this line of authority, and we agree that it compels the result here.

The series begins with *Miller v Auto-Owners Ins Co*, 411 Mich 633; 309 NW2d 544 (1981).[3] There, the Court confronted a different paradox: Under MCL 500.3105(1), PIP benefits are available "for accidental bodily injury arising out of the . . . maintenance . . . of a motor vehicle as a motor vehicle," but under MCL 500.3106(1), PIP benefits are *not* available for injuries that "arise out of the . . . maintenance . . . of a parked vehicle as a motor vehicle" absent certain narrow exceptions. "Since most, if not all, maintenance is done while the vehicle is parked, and since the

---

[3] In *Lefevers v State Farm Mut Auto Ins Co*, 493 Mich 960, 960 (2013), the Court observed that *Frazier v Allstate Ins Co*, 490 Mich 381; 808 NW2d 450 (2011), "effectively disavowed" *Miller* in certain respects not pertinent to this discussion.

[§ 3106] exceptions appear addressed to circumstances unrelated to normal maintenance situations, a conflict appears." *Miller*, 411 Mich at 638. In *Miller*, the plaintiff was injured when his parked car fell on him while he was replacing the shock absorbers, and the question was whether that was a compensable injury.

Rather than resolving the apparent tension through textual analysis, the Court focused on the act's underlying purpose. "The policy embodied in the requirement of § 3105 . . . is to provide compensation for injuries, such as Miller's, incurred in the course of repairing a vehicle." *Id*. at 639. The Court contrasted that with the policy that animated the parked vehicle exclusion:

> Injuries involving parked vehicles do not normally involve the vehicle *as a motor vehicle*. Injuries involving parked vehicles typically involve the vehicle in much the same way as any other stationary object (such as a tree, sign post or boulder) would be involved. There is nothing about a parked vehicle *as a motor vehicle* that would bear on the accident. [*Id*. at 639.]

The Court observed that the exceptions in § 3106(1) were designed to capture circumstances in which the injury resulted from the vehicle's character as a motor vehicle rather than its status as a stationary object. *Id*. at 640. Because "the policy behind the parking exclusion—to exclude injuries not resulting from the involvement of a vehicle as a motor vehicle"—did not "conflict[] with the policy of compensating injuries incurred in the course of maintaining (repairing) a motor vehicle," *id*. at 641, Miller's suit was allowed to move forward.

The logic of *Miller*—that parked vehicles are generally like other stationary objects—was central to the Court's next decision on this topic, *Heard v State Farm Mut Auto Ins Co*, 414 Mich 139; 324 NW2d 1 (1982). There, the plaintiff was refueling his uninsured vehicle when another car struck him and pinned him against his own vehicle. The insurer denied PIP benefits under MCL 500.3113(b), which bars recovery by an uninsured owner or registrant of a vehicle "involved in the accident." The Court disagreed. Drawing on *Miller*, it reasoned:

> Disqualification and loss distribution does not turn on whether a person is pinned against a gasoline pump, the wall of a service station, a tree, his vehicle, or another vehicle unless the vehicle is being used as a motor vehicle. When a vehicle is parked, it is deemed not to be in use as a motor vehicle, and, for purposes of the act, it is like a gasoline pump, the wall of a service station, or a tree. [*Id*. at 148.]

The Court analogized to the PPI system, including the exclusions from PPI benefits in MCL 500.3123 that sometimes turn on whether a vehicle is "involved" in an accident:

> A basic principle of the no-fault act is that neither a motorist nor his no-fault insurer is subject to liability for damage to a moving vehicle, but that his no-fault insurer is subject to liability for damage to a parked vehicle. That principle is expressed in language which indicates that a parked vehicle is not "involved" in an accident with a moving vehicle. [*Id*. at 149.]

*Heard* also noted that the order-of-priority rule for PPI benefits in MCL 500.3125 includes a vehicle "involved" in the accident but said that involving the insurer of a parked vehicle would

violate the no-fault principle that "a no-fault insurer has no liability to its insured for property damage unless he chooses to purchase collision or other insurance." *Id*. at 152. The Court concluded that the plaintiff's uninsured, parked vehicle was not "involved in the accident" and did not bar recovery.

Although *Heard* involved PIP benefits, its reasoning was formally extended to PPI benefits in *Turner*. In *Turner*, a thief hotwired and stole a vehicle. The next day, a Ferndale police officer noticed the vehicle running without keys in the ignition and suspected it had been stolen. When the officer attempted a traffic stop, the thief fled, initiating a police pursuit. During the chase, the thief ran a red light and caused a major accident, splitting a truck in two. The rear portion of the truck, which contained the fuel tank, crashed into a nearby building and ignited a fire that destroyed the structure. The insurers of the building sought PPI benefits from the insurers of the vehicles in the accident, as well as the City of Ferndale. In response, the insurer of the stolen vehicle and the City both argued that their respective vehicles were not "involved" in the accident under MCL 500.3125. They pointed out that the stolen vehicle never made physical contact with the damaged building, and the police cruiser never contacted the building or any of the other vehicles.

In resolving what it meant for a vehicle to be "involved" in an accident, the Court acknowledged that the statute did not define the term and turned to *Heard* for guidance. It concluded that "[f]or a vehicle to have been 'involved in the accident' requires, at a minimum, that the vehicle be used as a motor vehicle at the time of the accident." *Turner*, 448 Mich at 38. After surveying other cases applying *Heard*, the Court added: "for a vehicle to be considered 'involved in the accident' under § 3125, the motor vehicle, being operated or used as a motor vehicle, must actively, as opposed to passively, contribute to the accident." *Id*. at 39. The Court also reiterated *Heard*'s statement that "a parked vehicle is considered 'involved in the accident' only if one of the exceptions under § 3106(1) applies." *Id*. at 40 (footnote omitted). Ultimately, the Court found that both the stolen vehicle and the police cruiser were "involved" in the accident because they were being used as motor vehicles and had actively contributed to the events in question. *Id*. at 42-43.

Under *Miller*, *Heard*, and *Turner*, the resolution of this case is straightforward. *Heard* squarely held that "[w]hen a vehicle is parked, it is deemed not to be in use as a motor vehicle, and, for purposes of the act, it is like a gasoline pump, the wall of a service station, or a tree" unless one of the parked vehicle exceptions in § 3106(1) applies. 414 Mich at 148. *Heard* also stated that language throughout the no-fault act, including in the provisions governing PPI benefits, "indicates that a parked vehicle is not 'involved' in an accident with a moving vehicle." *Id*. at 150. Although *Heard* involved a claim for PIP benefits, *Turner* expressly applied *Heard*'s reasoning to PPI claims.[4] *Turner* also held that to be "involved" in an accident, a vehicle must, "at a

---

[4] *Turner*'s reference to the parked vehicle exception in MCL 500.3106 is admittedly confusing. Although *Turner* was a PPI case, MCL 500.3106, by its terms, applies only to PIP benefits—a limitation that this Court appeared to recognize in *Ford Motor Co v Ins Co of North America*, 157 Mich App 692, 697; 403 NW2d 200 (1987). Applying § 3106(1) to a PPI claim is therefore

minimum, . . . be used as a motor vehicle at the time of the accident" and "actively, as opposed to passively, contribute[] to the accident." 448 Mich at 38-39.

That standard is not met here. Wells's Escape was parked and unoccupied when Gibbs's Transit hit it. As a parked vehicle,[5] it is deemed not to be in use as a motor vehicle and is therefore—consistent with *Miller*—the same as "any other stationary object (such as a tree, sign post or boulder)."[6] Moreover, *Heard*'s statement that "a parked vehicle is not 'involved' in an accident with a moving vehicle" describes this situation exactly. Under *Turner*, to be "involved," a vehicle must "be used as a motor vehicle" and "must actively, as opposed to passively, contribute[] to the accident." Here, the vehicle was not being used as a motor vehicle at the time of the accident and was merely struck and propelled forward—it was entirely passive. Under this line of authority, the Escape was not "involved in the accident" under MCL 500.3125, and defendant is not liable for PPI benefits.

## C. PLAINTIFFS' ARGUMENTS

Plaintiffs contend that more recent decisions have introduced complexities that undercut the seemingly straightforward application of *Miller*, *Heard*, and *Turner*. In their view, the Escape was "involved in the accident," even under the standards articulated in those cases.

## 1. SPONTANEOUS COMBUSTION CASES

Plaintiffs first rely on a line of decisions we will refer to as the "spontaneous combustion cases." Those include *State Farm Fire & Cas Co v Auto-Club Ins Ass'n*, unpublished per curiam opinion of the Court of Appeals, issued June 9, 1998 (Docket No. 194426), and *Mich Millers Mut Ins Co v Lancer Ins Co*, 23 F Supp 3d 850 (ED Mich, 2014). Our research has also identified *Cincinnati Ins Co v Pa Gen Ins Co*, 209 Mich App 379; 531 NW2d 741 (1995), as an additional

---

analytically awkward. In any event, the issue is moot here because Gibson's affidavit confirms that none of the § 3106(1) exceptions apply.

[5] And, according to Gibson's unrebutted affidavit, it was a parked vehicle to which none of the MCL 500.3106(1) exceptions applied—though, as we previously noted, applying those exceptions in a PPI context is analytically awkward.

[6] Or, as *Heard* put it, the vehicle is "like a gasoline pump, the wall of a service station, or a tree." 414 Mich at 148.

example.[7]  In each, a parked vehicle caught fire while unattended, and the reviewing court held that the vehicle was "involved" in the accident.[8]

In *Cincinnati Ins Co*, for example, this Court reasoned that the parked vehicle "was directly involved in the accident 'as a motor vehicle'; its mechanical problems started the fire." *Id*. at 383. The Court distinguished *Heard* on the basis that the parked vehicle in that case "happened to be in the wrong place at the wrong time," whereas in *Cincinnati Ins Co*, the vehicle's mechanical problems affirmatively caused the damage. *Id.* at 382. The Court also quoted *Heard*'s observation that "[w]here no-fault liability arises from maintenance, the injury results from use of the vehicle as a motor vehicle, as when a battery or fuel line explodes or, as in *Miller*, a vehicle falls upon and injures a person." *Heard*, 414 Mich at 154, quoted in *Cincinnati Ins Co*, 209 Mich App at 383.

Although *State Farm Fire & Cas Co* did not cite *Cincinnati Ins Co*, it employed similar reasoning:

> Our Supreme Court has observed that injuries involving parked vehicles do not normally involve the vehicle as a motor vehicle because injuries involving parked vehicles typically involve the vehicle in much the same way as any other stationary object (such as a tree, sign post, or boulder) would be involved. Here, however, the qualitative characteristics of the truck which were the source of the fire are the key factors in the resulting fire damage. In other words, the quality that made the vehicle a motor vehicle are what caused the property damage. The truck is filled with flammable gasoline, has a source of ignition (such as the wiring), and has many flammable parts. Unlike a tree, sign post, or boulder, these very qualities of the motor vehicle can lead it to spontaneously burst into fire. Further, the truck was parked in the carport precisely because it was a motor vehicle. [*State Farm Fire & Cas Co*, unpub op at 3.]

---

[7] See also *Pete's Auto & Truck Parts, Inc v Greg Hibbitts Transp Co*, unpublished per curiam opinion of the Court of Appeals, issued June 9, 2022 (Docket No. 355841). In a pre-*Turner* decision, this Court approved of spontaneous combustion reasoning in *Mich Mut Ins Co v CNA Ins Cos*, 181 Mich App 376; 448 NW2d 854 (1989), which *Universal Underwriters Ins Group v Auto Club Ins Ass'n*, 256 Mich App 541, 546 n 1; 666 NW2d 294 (2003), later referenced with approval, albeit in dicta.

[8] See also *Hanson Cold Storage Co v Chizek Elevator & Transp, Inc*, 205 F Supp 3d 920 (WD Mich, 2016). Unlike the other cases, *Hanson Cold Storage Co* did not involve a vehicle that spontaneously combusted. It nonetheless concerned an unattended vehicle that caused damage when the improperly parked tractor-trailer slid down an incline while the driver was away and struck a building. The court's reasoning mirrored the other cases, concluding that the damage gave rise to PPI liability because it bore a causal connection to the vehicle's "transportational function," even though it was not being *operated* as a motor vehicle at the time of the accident.

-7-

Federal courts have also found this line of reasoning persuasive. See *Mich Millers Mut Ins Co*, 23 F Supp 3d at 858; *Hanson Cold Storage Co v Chizek Elevator & Transp, Inc*, 205 F Supp 3d 920, 925 (WD Mich, 2016).

These cases—while representing potentially interesting exceptions to the analysis in *Miller*, *Heard*, and *Turner*—are no basis for us to deviate from that controlling Supreme Court authority, because they are distinguishable from this case.[9] Each one involved damage caused by mechanical features that distinguished the vehicle from an ordinary stationary object—features such as fuel tanks, ignition systems, or electrical wiring—and the malfunction of those systems arguably traced back to the vehicle's maintenance or condition. That is not what occurred here. The Escape was not undergoing maintenance, did not suffer from a mechanical failure, and played no active role in the accident. It was simply struck by another vehicle and pushed forward. As such, it remained a passive object, treated no differently than "any other stationary object (such as a tree, sign post or boulder)," *Miller*, 411 Mich at 639, because it "happened to be in the wrong place at the wrong time," *Cincinnati Ins Co*, 209 Mich App at 382.

## 2. TRAFFIC CASES

Plaintiffs also rely on a group of decisions we will refer to as the "traffic cases." In *Auto Club Ins Ass'n v State Auto Mut Ins Co*, 258 Mich App 328; 671 NW2d 132 (2003), and *State Farm Mut Auto Ins Co v Protective Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued December 21, 2021 (Docket No. 355532), vehicles were stopped in traffic when accidents occurred, and the bodies of motorcyclists were thrown into the stationary vehicles. In both cases, this Court held that the stationary vehicles were "involved" in the accidents and that their insurers were liable for PIP benefits. We reasoned:

> While no case clearly states that physical contact between the injured party and a vehicle renders the vehicle "involved" in the accident under MCL 500.3114(5) and obligates the insurer to pay personal injury protection benefits, there is no case where there was physical contact between the injured party and a vehicle where the vehicle was not found to be involved.[10] It appears that a question is raised regarding involvement, and analysis under *Turner* becomes

---

[9] Although we are not bound by *State Farm Fire & Cas Co* because it is unpublished, see MCR 7.215(C)(1), nor by *Mich Millers Mut Ins Co* or *Hanson Cold Storage Co* because they are federal decisions interpreting state law, see *Ryder Truck Rental, Inc v Auto-Owners Ins Co*, 235 Mich App 411, 416; 597 NW2d 560 (1999) ("[D]ecisions of a federal district court regarding interpretations of Michigan law are not binding precedent in this Court . . . ."), the reasoning in all of these cases closely tracks *Cincinnati Ins Co*, which *is* published. Accordingly, we distinguish all four cases under MCR 7.215(J)(1).

[10] This assertion is inaccurate. In *Heard*, the injured party was pinned against his own vehicle, yet the Court nevertheless held that the vehicle was not "involved" in the accident.

necessary, only when there is no physical contact between the injured party and the vehicle. [*Auto Club Ins Ass'n*, 258 Mich App at 339-340 (footnote omitted).]

Based on this reasoning, plaintiffs contend that the Escape—because it made physical contact with the building—was "involved" in the accident.

The Michigan Supreme Court in *Miller*, *Heard*, and *Turner* drew a sharp distinction between parked and un-parked vehicles. If the "traffic cases" involved parked vehicles, they might be viewed as an exception to or refinement of this Supreme Court authority. The question then is whether the traffic cases involved parked vehicles. The Supreme Court has declined to define what qualifies as "parked" under MCL 500.3106,[11] but this Court has. In *Amy v MIC Gen Ins Corp*, 258 Mich App 94; 670 NW2d 228 (2003), rev'd in part on other grounds sub nom *Stewart v Michigan*, 471 Mich 692 (2004), we considered whether a police cruiser stopped with emergency lights in a traffic lane was "parked" when it was struck. We explained:

> Generally, a vehicle is parked if its wheels cannot move. Parking is a form of stopping . . . .
>
> . . . "Park" is defined as "a setting in an automatic transmission in which the transmission is in neutral and the brake is engaged" or "to leave (a vehicle) in a certain place for a period of time." *Random House Webster's College Dictionary* (1997), p 948. [*Id*. at 123 (footnotes omitted).]

In the context of this case, the second dictionary definition is most appropriate: to park a vehicle is "to leave [it] in a certain place for a period of time." We therefore disagree with plaintiffs' reliance on the traffic cases, because they do not involve parked vehicles.[12] A vehicle stopped in traffic is only *incidentally* where it happens to be at that moment. It has not been *left* in a location, an action that implies an intent to place and keep the vehicle in that location for some amount of time. Nor is the location *certain*, as it continues to change with the flow of traffic. These cases do nothing to derogate from the rule expressed in *Miller* and *Heard* that a parked vehicle—when it is not receiving maintenance and when none of the parked vehicle exceptions in MCL 500.3106 apply—is a stationary object that is not "involved" in an accident.

Plaintiffs also cite *Home-Owners Ins Co v Citizens Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued July 13, 2010 (Docket Nos. 291166, 291257). There, a semi-tractor towing another semi-tractor pulled over after its driver noticed a tire had come off the towed

---

[11] When the Supreme Court addressed the potential tension between PIP coverage for maintenance of a vehicle under MCL 500.3105 and the exclusion for injuries involved a "parked" vehicle under MCL 500.3106, it avoided defining the term by concluding instead that the issue "should not be resolved solely by focusing on the term 'parked.' " *Miller*, 411 Mich at 638.

[12] As with several of the spontaneous combustion cases, *State Farm Mut Auto Ins Co* is unpublished and not binding. But because its reasoning is effectively indistinguishable from *Auto Club Ins Ass'n*, we distinguish both decisions under MCR 7.215(J)(1).

vehicle. The tire rolled into traffic and caused a collision. The insurer of the towing vehicle contended that the vehicle was parked and therefore not "involved." The panel rejected that argument, reasoning:

> A vehicle's involvement in an accident does not depend on the status of the vehicle at the time when the specific loss at issue occurred. Rather, the test for determining whether a vehicle was "involved in the accident" depends on the causal relationship between the vehicle and the injury at issue. [*Id*., unpub op at 7.]

Even if we were bound by this unpublished decision—and we are not, MCR 7.215(C)(1)—it is readily distinguishable.[13] The panel's decision rested on the fact that the tire detached while the vehicle was in motion, and the vehicle came to a stop only afterward. Even accepting that a vehicle is not necessarily "parked" simply because it is stationary "at the *exact* moment" an accident occurs, *id.*, the Escape here was parked and unoccupied throughout the relevant period. Nothing in the record removes it from the parked-vehicle jurisprudence of *Miller*, *Heard*, and *Turner*.

## IV.  CONCLUSION

Under *Miller*, *Heard*, and *Turner*, a parked vehicle is generally treated as a stationary object—akin to a tree, signpost, or building—when determining whether it was "involved" in an accident under Michigan's no-fault statute. While those cases also suggest that a parked vehicle may be considered "involved" if one of the parked vehicle exceptions in MCL 500.3106(1) applies, that provision is specific to PIP claims and does not expressly extend to PPI benefits. In any event, none of the § 3106(1) exceptions apply here.

Plaintiffs' efforts at bringing this case within the ambit of other caselaw are unpersuasive. While some courts have extended *Miller*'s holding regarding injuries suffered during maintenance to include damage caused by latent mechanical failures—such as spontaneous combustion—that caselaw is not controlling here because it is plainly distinguishable. The Escape was not undergoing maintenance, did not malfunction, and played no active role in the accident. It was simply a passive object, struck by another vehicle and pushed into a building. The "traffic cases" cited by plaintiffs are similarly unavailing. Those decisions involved vehicles temporarily stopped in traffic—not vehicles that were parked—and therefore fall outside the framework established in *Miller*, *Heard*, and *Turner*.

In sum, because the Escape was properly parked, unoccupied, not in use as a motor vehicle, and played no active role in the accident, it was not "involved" within the meaning of MCL 500.3125. The trial court therefore properly granted summary disposition.

---

[13] We express no opinion on whether *Home-Owners Ins Co* was correctly decided. It is simply inapplicable on these facts.

-10-

Affirmed.  Defendant, having prevailed in full, may tax costs as the prevailing party pursuant to MCR 7.219.

/s/ Matthew S. Ackerman
/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani